No. 23-4427

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

UNITED STATES OF AMERICA,

Appellee,

v.

VALFONSO DEWITT,

Appellant.

---

*Appeal from the United States District Court for the
District of Maryland, Southern Division
Honorable Paula Xinis, United States District Judge*

---

BRIEF OF APPELLEE
UNITED STATES OF AMERICA

---

**Erek L. Barron**
**United States Attorney**

**Brooke Y. Oki**
**Assistant United States Attorney**

**6406 Ivy Lane, 8th Floor**
**Greenbelt, MD 20770**
**(301) 344-4433**

June 14, 2024                    *Attorneys for the Appellee*

# TABLE OF CONTENTS

STATEMENT OF JURISDICTION.................................................................1

STATEMENT OF THE ISSUE ....................................................................1

STATEMENT OF THE CASE......................................................................2

STATEMENT OF FACTS.............................................................................3

    A.    Initial Investigation and Gaston Cellphone Interception Order ............3

    B.    Investigation Involving Dewitt and Subsequent Cellphone Interception Orders .................................................................................................4

    C.    Further Evidence of Dewitt's Participation in Drug Trafficking Revealed ..............................................................................................7

SUMMARY OF ARGUMENT ....................................................................10

ARGUMENT ..............................................................................................12

THE DISTRICT COURT PROPERLY DENIED DEWITT'S MOTION TO SUPPRESS THE WIRETAP EVIDENCE. ..................................................12

    A.    Standard of Review .............................................................................12

    B.    The District Court Properly Found a Substantial Basis for the Issuing Court's Finding of Probable Cause ....................................................13

    C.    The Agents Relied on Good Faith on The Validity of The Wiretap Orders. ...............................................................................................19

CONCLUSION...........................................................................................22

# TABLE OF AUTHORITIES

## Cases

*United States v. Biglow*, 562 F.3d 1272 (10th Cir. 2009)...........................................14

*United States v. Brewer*, 204 Fed. Appx. 205 (4th Cir. 2006) (unpub.).................20

*Brissett v. Paul*, 141 F.3d 1157 (4th Cir. 1998)...........................................13

*United States v. Brunson*, 968 F.3d 325 (4th Cir. 2020) ........................... 11, 20

*United States v. Campbell*, 851 F. App'x 370 (4th Cir. 2021)...............................14

*Davis v. United States*, 131 S. Ct. 2419 (2011) .........................................20

*United States v. Davis*, 782 F. App'x 246 (4th Cir. 2019) ...............................14

*United States v. DePew*, 932 F.2d 324 (4th Cir. 1991) ............................ 13, 14, 18

*United States v. Doyle*, 650 F.3d 460 (4th Cir. 2011) .....................................17

*United States v. Errera*, 616 F. Supp. 1145 (D. Md. 1985).....................................14

*United States v. Fernandez Sanchez*, 46 F.4th 211 (4th Cir. 2022)........................22

*Illinois v. Gates*, 462 U.S. 213 (1983) ................................... 12, 14, 17

*United States v. Kelly*, 592 F.3d 586 (4th Cir. 2010).........................................12

*United States v. Leon*, 468 U.S. 897 (1984) ................................... 11, 20

*United States v. Lyles*, 910 F.3d 787 (4th Cir. 2018)..............................................21

*United States v. Moore*, 41 F.3d 370 (8th Cir. 1994) ...........................................20

*United States v. Oriakhi*, 57 F.3d 1290 (4th Cir. 1995)...........................................12

*United States v. Pernell*, No. 20-4135, 2023 WL 3050983 (4th Cir. Apr. 24, 2023)
............................................................................................ 11, 14

*United States v. Runner*, 43 F.4th 417 (4th Cir. 2022) ............................................12

*United States v. Talbert*, 706 F.2d 464 (4th Cir. 1983) ...........................................12

*United States v. Wilhelm*, 80 F.3d 116 (4th Cir. 1996)...........................................21

*United States v. Wilson*, 484 F.3d 267 (4th Cir. 2008) ...........................................13

## Statutes

18 U.S.C. § 3231 .........................................................................................1

21 U.S.C. § 841 ...........................................................................................1

21 U.S.C. § 846 ...........................................................................................1

28 U.S.C. § 1291 .........................................................................................1

## STATEMENT OF JURISDICTION

A federal grand jury indicted the Appellant, Valfonso Dewitt ("Dewitt"), for conspiracy to distribute controlled substances (fentanyl and heroin), in violation of 21 U.S.C. §§ 841, 846 and use of a communication facility to facilitate a drug felony, in violation of 21 U.S.C. § 843(b). JA150-162. The District Court (Hon. Paula Xinis, J.) had jurisdiction over this federal criminal case pursuant to 18 U.S.C. § 3231. A jury convicted Dewitt, and the District Court sentenced him to 121 months of imprisonment, entering its judgment on June 20, 2023. JA852-857. Dewitt filed a timely notice of appeal on June 22, 2023. JA858. This Court has jurisdiction over Dewitt's appeal pursuant to 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUE

Whether the District Court properly denied Appellant's motion to suppress evidence derived from a wiretap, where (1) the affidavits in support of the wiretap sufficiently established probable cause and necessity, and (2) investigators relied in good faith on the issuance of the wiretap orders.

1

## STATEMENT OF THE CASE

This appeal concerns a narcotics distributor whom a jury convicted after trial.

On August 5, 2021, a federal grand jury indicted Dewitt for conspiracy to distribute and possess with intent to distribute controlled substances.   JA3.

On December 27, 2021, Dewitt filed a motion to suppress the evidence collected from an electronic surveillance and wiretap interception (the "wiretap") authorized by United States District Judge Theodore D. Chuang.   JA14-17.

On December 15, 2022, the Government filed a response to Dewitt's motion to suppress.   JA18-31.

On January 5, 2023, the District Court held a hearing on Dewitt's motion. JA95-149.   On the same day, the Court issued an oral order denying Dewitt's motion.   JA7.

On January 26, 2023, a federal grand jury indicted Dewitt in a superseding indictment.   JA151-162.   The first count of the superseding indictment charged Dewitt with conspiracy to distribute controlled substances with co-conspirators James Isaac Gaston ("Gaston") and Jacqueline Shelton Gaston ("Shelton") between January 2019 and September 2019.   JA151-162.   The sixth, seventh, eighth, ninth,

2

and tenth counts of the superseding indictment charged Dewitt with use of a communication facility to facilitate a drug felony on September 4, 6, and 12, 2019. JA151-162.

Between February 27 and March 6, 2023, this case was tried before a jury. JA9.   On March 6, 2023, the jury returned a verdict of guilty as to counts one, seven, and ten and not guilty as to courts six, eight, and nine.   JA776-781.

Dewitt was sentenced to 121 months of imprisonment.   JA853.   He then timely filed this appeal.   JA858.

## STATEMENT OF FACTS

### A. Initial Investigation and Gaston Cellphone Interception Order

In late 2018, a confidential source reported to the Drug Enforcement Administration ("DEA") that Gaston and Shelton were distributing heroin and cocaine in the Maryland-Washington, DC area.   JA32.   Between November 2018 and April 2019, the source participated in a series of controlled and audio-recorded meetings with Gaston, during which Gaston made incriminating statements about drug trafficking activities involving himself and his wife, Shelton. JA34.

Based on these meetings, along with other evidence, the DEA sought authorization to intercept wire and electronic communications occurring over

3

Gaston's cellphone.   JA35.  On May 20, 2019, United States District Judge Theodore D. Chuang issued an order authorizing the requested interceptions.   JA35. The DEA subsequently intercepted wire and electronic communications occurring over Gaston's cellphone from May 21, 2019, to June 20, 2019.

### B. Investigation Involving Dewitt and Subsequent Cellphone Interception Orders

In late February 2019, GPS tracking data showed that Gaston traveled to the Bronx, New York.   JA39.   Using pen register data, agents determined that Gaston's cellphone was in contact with what they determined to be Dewitt's cellphone while there.[1] JA45.   Dewitt had multiple prior felony convictions for possession of controlled substances dating back to 1977.   JA871-872.

On March 1, 2019, in a recorded call, Gaston told a confidential source, "[g]oing to talk to a buddy today to see when this whole thing is supposed to come down ... I'm getting a one big H and one coke. . . Let me show you something, they keep talking about fentanyl, this is a trick thing that they are using up there in New York, and they are doing it everywhere, through New York. . . ."   JA893.   The

---

[1]  The affidavit in support of the DEA request for a wiretap of Shelton and Dewitt's cellphones detailed the basis of Dewitt's cellphone identification.   JA871, JA895-896.   Interception of Shelton's (Gaston's wife) cellphone was also authorized as Target Telephone 2.   Dewitt's cellphone was Target Telephone 3.

affiant explained how Gaston meant he was going to talk to his source of supply and purchase heroin ("one big H") and cocaine ("one coke"). JA892.  At the time, Dewitt lived in New York.   JA871.

On March 7, 2019, on a recorded jail call, Gaston told a co-conspirator that Dewitt, who used the alias "Valentino," was looking to sell narcotics.   Gaston stated, "I gotta get up and see Valentino, he doing some things together, he's shaking and baking . . . . He said man I need a store front . . . . Where he at, they got that brown and white. They looking for white now because of that crazy ass fentanyl." JA893.   The affiant explained that this conversation referenced heroin, cocaine, and fentanyl.

On May 23, 2019, Gaston told another co-conspirator that he was going to deliver money to Dewitt to procure a further supply of drugs.  JA897-899.   As the affiant explained, Gaston stated, "I'ma run to see Val, because . . . I'm taking something back to him. And he said he shaking, he's been shaking some bushes, so some things might be happening." JA897-899.   The affiant explained that this meant Gaston was taking money to Dewitt and Dewitt was arranging to obtain narcotics.   JA897-899.

At approximately 2:30 p.m. on May 29, 2019, Gaston and Dewitt had a phone

5

conversation wherein they coordinated meeting in person.   JA899.   About an hour later, Gaston texted Dewitt an address of a church in Newark, New Jersey.   JA899. Soon after, Dewitt texted Gaston, "Salaam I'm outside."   JA899.   Agents conducting surveillance of the meet up observed Gaston remove a black plastic bag—which appeared rectangular, heavy, and resembled the shape of stacks of currency—from his vehicle and deliver it to Dewitt in the church parking lot. JA899-900.   Dewitt then entered the driver's seat of a Mitsubishi Outlander with New Jersey license plates.   JA900.   Agents uncovered that the New Jersey license plate number on the Mitsubishi Outlander was associated with the same subscriber address listed for Target Telephone 3 (Dewitt's cellphone).   JA895.   A check for traffic violations involving the Mitsubishi Outlander revealed that Dewitt was issued a traffic summons while operating the vehicle on June 21, 2018.   JA895.

The next day, Gaston informed his associates on a call that they would be receiving narcotics in the near future and referred to being with Valentino the day before.   JA900-901.

On May 31, 2019, Gaston and Dewitt had a phone call.   Dewitt told Gaston, "these n----- got me ripping and running, I'm trying to make shit jump off."   JA902. Later Gaston said, "I'm lining up and the stacks should be, one or two spots, stacks

6

can be there . . . ." referring to money.    JA902-903.

The DEA sought authorization to intercept wire and electronic communications occurring over Dewitt's cellphone concerning the possession and conspiracy to possess with intent to distribute controlled substances as well as the use of a communication facility to facilitate such offenses.    JA868.    On June 24, 2019, Judge Chuang issued an order authorizing the requested interceptions and the DEA subsequently intercepted communications occurring over Shelton and Dewitt's cellphones from June 24, 2019, to July 23, 2019.    JA35.    On July 26, 2019, Judge Chuang issued another order authorizing interception.    JA34-35.    The DEA subsequently intercepted communications from July 26, 2019, to August 25, 2019. JA34-35.    Finally, on August 23, 2019, Judge Chuang issued an order authorizing continuation of interception for Dewitt's cellphone only.    JA34-35.    The DEA subsequently continued interception over Dewitt's cellphone from August 25, 2019, to September 22, 2019.    JA34-35.

### C. Further Evidence of Dewitt's Participation in Drug Trafficking Revealed

The wire and electronic communications revealed that, between June and September 2019, Dewitt made arrangements to purchase and redistribute large quantities of narcotics to multiple narcotics traffickers, including Gaston.    JA35.

For example, on June 25, 2019, at 9:43 a.m., the DEA intercepted a call over Dewitt's cellphone during which Gaston told Dewitt that he (Gaston) would soon have enough money to purchase a supply of drugs. Gaston stated, "My sister gonna come across some chump change and . . . probably about a month or so . . . I'm gonna come up there and talk to [you]."    JA52.

Using "racks" to refer to thousands of dollars, Dewitt responded, "When you say chump change, you talking 'bout 30, 40 racks or something?" JA52.   Dewitt explained that, if so, when he acquired the drug supply, he would contact Gaston so that Gaston could "turn that into . . . 65 or 100 racks. . . .?"   JA52.

On July 2, 2019, at 1:14 p.m., the DEA intercepted a call over Dewitt's cellphone during which Dewitt updated Gaston on his plan to obtain a further drug supply.   Dewitt reported that he had "called Daddy-O back out there in the Midwest . . . about that blend," *i.e.*, that Dewitt had contacted a Midwestern distributor about supplying a mixture of heroin and fentanyl (the "blend").   JA54.   Dewitt explained, however, that when he sampled the blend, he discovered that it was poor quality, telling Gaston, "he had sent me something, but it wasn't proper."   JA54. Accordingly, Dewitt informed Gaston that he told the Midwestern supplier "to fix it" or else it would "fuck up everybody shit," *i.e.*, it would ruin the ability of all

8

downstream distributors to profit from it.   JA54.

On September 4, 2019, at 5:32 p.m., the DEA intercepted a call over Dewitt's cellphone during which he notified Gaston that he had successfully identified a wholesale drug supplier, but that the price (the "ticket") would be $65,000 per kilogram with a $10,000 down payment.   JA73.   Although Dewitt told Gaston that he was trying to negotiate the price per kilogram down to $60,000, Dewitt persuaded Gaston that they should nonetheless purchase the supply at the higher price until they could generate sufficient drug proceeds to later buy more drugs at a lower price. As Dewitt explained, "Get what you gotta get off them, get right back . . .and then we off to the races."   JA74.   Gaston responded, "Hey, that's reasonable bro." JA74.   On September 6, 2019, at 1:23 a.m., the DEA intercepted a call over Dewitt's cellphone during which Gaston notified Dewitt that Gaston had arrived at Dewitt's location.   JA76.

Data associated with the location of cellphones used by Dewitt and Gaston revealed that, during the early morning hours of September 6, 2019, both cellphones were located in the same area of Memphis, Tennessee.   JA76.   Consistent with Gaston's participation in a drug transaction with Dewitt, location data further revealed that, after Gaston's phone arrived in Memphis, it stayed there for only a

9

short period of time before it began returning east toward Maryland.   JA76.

At approximately 2:50 p.m. on September 6, 2019, agents located Gaston driving a vehicle eastbound on Interstate 66 in Virginia.   JA76.   Gaston was the sole occupant.   Law enforcement then surveilled Gaston as he drove from Virginia into Maryland on Interstate 495.   JA76.   In Maryland, an officer operating a marked police vehicle observed Gaston commit a traffic violation.   JA76-77.   At approximately 3:55 p.m., the officer initiated a traffic stop on I-495 near Route 210 in Prince George's County, Maryland.   Gaston was the sole occupant of the vehicle and identified himself during the traffic stop by producing his Maryland driver's license.   JA77.   Meanwhile, another officer responded to the stop and conducted an exterior canine scan of Gaston's vehicle.   JA77.   After the canine alerted to the odor of narcotics inside, officers searched the vehicle and located a suspected drug package on the back seat.   JA77.   The package was opened and its contents were later analyzed by a DEA laboratory, which found that the package contained approximately 489 grams of fentanyl.   JA77.

## SUMMARY OF ARGUMENT

The District Court properly denied Dewitt's motion to suppress the wiretap evidence when it concluded that the Government's affidavit seeking authorization

10

for the wiretap of Dewitt's phone was supported by "sufficient probable cause." JA133.  Indeed, the affidavit detailed numerous recorded conversations where the speaker referred to Dewitt and his role and actions in the procurement and sale of narcotics.  It described a physical meeting between Dewitt and a fellow co-conspirator wherein money for narcotics was exchanged.  Through those events and other facts, the affidavit established the only logical deduction--Dewitt was involved in the conspiracy to distribute narcotics and there was fair probability that the interception of his cellphone would lead to more evidence of the conspiracy.  *See United States v. Pernell*, No. 20-4135, 2023 WL 3050983, at *1 (4th Cir. Apr. 24, 2023) ("[t]o establish probable cause, the government need only demonstrate "a fair probability" that communications concerning the criminal activity will be intercepted).

Law enforcement also relied, in good faith, on the validity of the wiretap authorizations, which provides further grounds on which the District Court's orders should be affirmed.  *See United States v. Brunson*, 968 F.3d 325, 333-34 (4th Cir. 2020) (applying *United States v. Leon*, 468 U.S. 897, 922 (1984) in context of challenge to wiretap).

Finally, the Government's wiretap applications were closely scrutinized and

supervised by Judge Chuang, and his findings on necessity and exhaustion should be given "'considerable deference.'" *United States v. Oriakhi*, 57 F.3d 1290, 1298 (4th Cir. 1995) (citation omitted).

## ARGUMENT

### THE DISTRICT COURT PROPERLY DENIED DEWITT'S MOTION TO SUPPRESS THE WIRETAP EVIDENCE.

#### A.    Standard of Review

When reviewing a district court's denial of a motion to suppress, this Court reviews legal conclusions *de novo*, and any factual determinations only for clear error. *United States v. Kelly*, 592 F.3d 586, 589 (4th Cir. 2010). Where, as here, the district court denied the Appellant's motion to suppress, this Court construes the evidence in the light most favorable to the government. *Id*.; *United States v. Runner*, 43 F.4th 417, 421 (4th Cir. 2022).

The standard of review governing affidavits in support of wiretap orders is identical to the standard governing the review of search warrants, because a wiretap order is a specialized sort of search warrant. *United States v. Talbert*, 706 F.2d 464, 467 (4th Cir. 1983). A reviewing court is not to substitute its judgment as to probable cause, but need only determine whether there was a substantial basis for the issuing court's determination of probable cause. *Illinois v. Gates*, 462 U.S. 213,

238-39 (1983).  Great deference is paid to an issuing judge's determination of a substantial basis for concluding that electronic surveillance will uncover evidence of wrongdoing.  *United States v. DePew*, 932 F.2d 324, 327 (4th Cir. 1991).  The district court's determination of probable cause will be sustained if the court had a substantial basis for its conclusion.  *Brissett v. Paul*, 141 F.3d 1157 (4th Cir. 1998). And with regard to the district court's specific finding that the "necessity" requirements were met for a wiretap, that finding is reviewed only for abuse of discretion.  *United States v. Wilson*, 484 F.3d 267, 280 (4th Cir. 2008).

**B.    The District Court Properly Found a Substantial Basis for the Issuing Court's Finding of Probable Cause**

While Dewitt argues that the District Court erred in finding that sufficient probable cause existed to authorize a wiretap of his cellphone, his arguments are not well-taken.  Specifically, while he asserts that the affidavit contained no evidence that "Dewitt ever sold, possessed or delivered drugs to Gaston, or any other person," he misunderstands the applicable standard, and the evidence presented in the affidavit.  Because there was more than a substantial basis to extend the wiretap authorization to Dewitt's phone, this Court should affirm.

To establish probable cause, the government need only demonstrate "a fair probability" that communications concerning the criminal activity will be

13

intercepted. *Pernell*, 2023 WL 3050983, at *1. Probable cause is a "practical, nontechnical conception," designed to operate in conjunction with the "commonsense," "practical considerations of everyday life," rather than the elaborate rules employed by "legal technicians." *United States v. Biglow*, 562 F.3d 1272, 1281 (10th Cir. 2009) (citing *Gates*, 462 U.S. at 230–31). Applications for a wiretap, like other electronic surveillance orders, should be read in a "in a common sense and realistic fashion." *United States v. Errera*, 616 F. Supp. 1145, 1149 (D. Md. 1985); *see also Gates*, 462 U.S. at 230-31. In applying for an order authorizing a wiretap, "it is not necessary for the applicant to prove beyond a reasonable doubt that communications concerning the offense will be obtained, but only that there is a fair probability thereof." *Depew*, 932 F.2d at 327. Finally, this Circuit has "long held that expert testimony on the meaning of coded language and drug trafficking patterns by government agents with field experience is admissible." *United States v. Campbell*, 851 F. App'x 370, 376 (4th Cir. 2021); *see also United States v. Davis*, 782 F. App'x 246, 251–52 (4th Cir. 2019) ("[T]he agents' interpretation of the coded terms—which ties the wiretapped conversations to cocaine trafficking—was reasonable.")

Here, the District Court reviewed the decision of the issuing judge to

14

determine whether a substantial basis for the probable cause determination existed and properly concluded that it did.    The affidavit established a fair probability that communications about drug activity were occurring specifically between Dewitt and his co-conspirators warranting electronic surveillance through a wiretap.    First, as reviewed above, the affidavit painted a chronological picture of Gaston's involvement in drug trafficking.    Second, it detailed how Gaston was in conversation with the individual using Target Telephone 3.    Third, it described how agents tied "Target Telephone 3," as it was referred to in the wiretap materials, to Dewitt.    JA895-896.    In totality, these conversations established probable cause for the wiretap.

In at least three conversations before Dewitt's May 29, 2019, meeting with Gaston in Newark, NJ, Gaston referred to meeting Dewitt who was looking to sell narcotics.    On March 1, 2019, Gaston stated, "[I'm] [g]oing to talk to a buddy today to see when this whole thing is supposed to come down ... I'm getting a one big H and one coke. . . Let me show you something, they keep talking about fentanyl, this is a trick thing that they are using up there in New York, and they are doing it everywhere, through New York. . . ."    On March 7, 2019, Gaston stated, "I gotta get up and see Valentino, he doing some things together, he's shaking and baking .

15

. . . He said man I need a store front . . . . Where he at, they got that brown and white. They looking for white now because of that crazy ass fentanyl." JA893.   On May 23, 2019, Gaston stated, "I'ma run to see Val, because . . . I'm taking something back to him. And he said he shaking, he's been shaking some bushes, so some things might be happening."   JA897-899.

On May 29, 2019, Gaston and Dewitt had a phone conversation wherein they coordinated meeting in person.   JA899.   About an hour later, Gaston's phone texted Dewitt's phone (Target Telephone 3) an address of a church in Newark, New Jersey and about an hour after that Dewitt texted Gaston "Salaam I'm outside." JA899.   Agents conducting surveillance of the meet up observed Gaston remove a black plastic bag—which appeared rectangular, heavy, and resembled the shape of stacks of currency—from his vehicle and deliver it to Dewitt in the church parking lot.   JA899-900.

On May 30, 2019, on a recorded call, Gaston referred to being with Valentino the day prior.   JA901.

The affiant explained that two days after their meet up, Gaston and Dewitt had a phone call.   Dewitt told Gaston, "these n----- got me ripping and running, I'm trying to make shit jump off."   Later Gaston said ". . . . I'm lining up and the stacks

16

should be, one or two spots, stacks can be there . . . ." JA902-903. The affiant explained that Dewitt was actively negotiating for narcotics with sources of supply and Gaston had costumers ready to purchase narcotics once Dewitt obtained the supply. JA902-903.

Those incidents strongly tie Dewitt to drug trafficking and the sale of narcotics. For a probable cause finding, the affidavit need not, as Dewitt seems to suggest on appeal, explicitly describe Dewitt possessing drugs or delivering them to others. *Gates*, 462 U.S. at 245 ("[P]robable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity.").

On appeal, Dewitt cites to *United States v. Doyle* to support his argument that the wiretap affidavit lacked probable cause. 650 F.3d 460 (4th Cir. 2011). Problematically for Dewitt, *Doyle* did not even involve a wiretap. Rather, *Doyle* construed a search warrant for evidence of possession of child pornography in the defendant's home. *Id.* at 464. This Court found that, while the search warrant affidavit detailed facts about allegations of child molestation by the defendant, it did not contain facts regarding the possession of child pornography. *Id.* at 472. This Court correctly reasoned that evidence of one crime (child molestation) did not support probable cause to search for the other (possession of child pornography).

17

*Id.* Indeed, there was only one mention in the search warrant affidavit of the presence of child pornography in the defendant's home. *Id.*

The wiretap affidavit at issue in this case is easily distinguishable from the search warrant affidavit in *Doyle*. As aforementioned, in over 30 paragraphs, it detailed recorded conversations involving Dewitt and the recorded conversations his co-conspirators some of which involved explicit reference to drugs like "fentanyl." It described an in-person meet up between Dewitt and Gaston in which agents believed cash was transferred. And it referenced Dewitt's strenuous efforts to secure narcotics for Gaston and Gaston's readiness with customers. The Government did not need to prove Dewitt's narcotics involvement beyond a reasonable doubt. *Depew*, 932 F.2d at 327. The evidence provided the District Court with a more than "fair probability" that interceptions would show criminal conduct related to drug trafficking. This was more than sufficient under the low standard for probable cause.

Finally, the affidavit's conclusion that "Val" or "Valentino" referred to Valfonso Dewitt is, as the District Court stated during the pretrial motions hearing, a "logical reference" corroborated by the sequence of events. JA107-108. Agents determined that Dewitt lived in New York. JA871, JA895-896. In February 2019,

18

GPS data showed Gaston and Dewitt together in New York.   JA45. The next month, Gaston referred to a connect in New York and needing to travel to New York to see "Valentino."   JA893.   Then—less than a week after Gaston told a co-conspirator, "I'ma run to see Val . . . because I'm taking something back to him"—agents observed Gaston meet with Dewitt in Newark, NJ and deliver a packet to Dewitt. JA898-899.   After the meet up, Gaston referenced having been with "Valentino" the day prior on a phone call.   JA901.

Under the totality of those circumstances, the facts presented to Judge Chuang in the wiretap affidavit connecting Target Telephone 3 to Dewitt and Dewitt to his alias Valentino, were sufficient to establish probable cause.

Accordingly, the record shows that the District Court properly found a substantial basis for the issuing court's determination of probable cause.   The District Court's decision should be affirmed.

## C.    The Agents Relied on Good Faith on The Validity of The Wiretap Orders.

Alternatively, even if there was some question regarding the validity of the wiretap orders, the District Court's order denying suppression should still be affirmed because of the good faith exception to the exclusionary rule.

The exclusionary rule does not apply when law enforcement agents act in

objectively reasonable reliance on a warrant later held invalid.   *See Davis v. United States*, 131 S. Ct. 2419, 2429 (2011); *United States v. Leon*, 468 U.S. 897, 922 (1984).   This Court and other circuits have applied *Leon*'s good faith standards to wiretap orders.   *See United States v. Brunson*, 968 F.3d 325, 334 (4th Cir. 2020) (concluding that "where law enforcement officials have acted reasonably and in good faith to comply with the central substantive requirements of the Wiretap Act . . . suppression is not justified"); *United States v. Brewer*, 204 Fed. Appx. 205, 208 (4th Cir. 2006) (unpub.) (holding that even if the affidavit lacked probable cause or even if exhaustion requirements had not been met, the "affiants were entitled to rely on the facially valid wiretap orders pursuant to the good faith exception of [*Leon*]"); *United States v. Moore*, 41 F.3d 370, 376 (8th Cir. 1994) (good faith doctrine required that suppression of wiretap evidence be denied, despite defect in order allowing electronic surveillance).

Here, the wiretap applications, affidavits, and orders were approved by the United States Attorney's Office for the District of Maryland, a Deputy Assistant Attorney General within the Department of Justice, and a federal district court judge all before interceptions were conducted.   JA6, JA920, JA959.

Even assuming, *arguendo,* that Judge Chuang improperly found probable

20

cause, investigators acted in good faith reliance on his order. As such, even if the wiretap orders in this case were invalid, which they were not, the evidence still would have been properly received under the good faith exception to the exclusionary rule.

The barebones affidavits in the cases cited by Dewitt are in stark contrast with the plethora of reliable, factual detail establishing probable cause in the wiretap affidavit for Dewitt's cellphone. In *Wilhelm*, the affidavit was based solely on a tip from a caller the affiant had never met, before or after the call, who said the defendant possessed marijuana in her home. 80 F.3d 116, 118 (4th Cir. 1996). The Court held that the officer could "not reasonably rely on an unknown, unavailable informant without significant corroboration." *Id.* In *Lyles*, officers searched an entire home based on one "flimsy trash pull that produced scant evidence of a marginal offense [marijuana possession]. . . ." 910 F.3d 787, 797 (4th Cir. 2018). Here, law enforcement knew that Gaston was a drug dealer; they had controlled audio recordings of Gaston talking to a source of drug trafficking. And then law enforcement observed through physical surveillance an exchange between Gaston and Dewitt and had corroborating phone calls in which Gaston confirmed meeting his source "Valentino." The Defendant is simply wrong to claim this affidavit was

21

barebones; it was more than ample.

In this way, Dewitt's is not a case where law enforcement made conclusory statements based on shallow investigatory efforts.  The evidence was derived from a nearly year-long investigation into Dewitt and his co-conspirators, including audio and physical surveillance.  The good faith exception is yet another reason why this Court should affirm.[2]

## CONCLUSION

For the reasons stated, this Court should affirm the order denying Dewitt's motions to suppress, and should affirm the District Court's judgment.

Respectfully submitted,

Erek L. Barron
United States Attorney

_____

Brooke Y. Oki
Assistant United States Attorney

June 14, 2024

_____

[2] The issue of exhaustion was raised in Dewitt's pre-trial motion to suppress evidence from the wiretap but is not raised here in the opening brief on appeal. As such, the issue is waived and the government will not address it.  *See United States v. Fernandez Sanchez*, 46 F.4th 211, 219 (4th Cir. 2022).

**STATEMENT WITH RESPECT TO ORAL ARGUMENT**

The United States respectfully suggests that oral argument is not necessary in this case. The legal issues are not novel, and oral argument likely would not aid the Court in reaching its decision.

# CERTIFICATE OF COMPLIANCE

1.      This brief has been prepared using:

**Microsoft Word, Times New Roman, 14 Point**

2.      EXCLUSIVE of the corporate disclosure statement; table of contents; table of citations; statement with respect to oral argument; any addendum containing statutes, rules, or regulations, and the certificate of service, the brief contains 4,563 words.

I understand that a material misrepresentation can result in the Court's striking the brief and imposing sanctions.    If the Court so directs, I will provide an electronic version of the brief and/or a copy of the word or line print-out.

_Brooke Oki_
_____
Brooke Y. Oki
Assistant United States Attorney

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 14, 2024, I electronically filed the

foregoing with the Clerk of Court using the CM/ECF System, which will send notice

of such filing to the following registered CM/ECF user:

Alfred Guillaume, III
Law Offices of Alfred Guillaume III
6305 Ivy Lane
Suite 700
Greenbelt, MD 20770
202-321-0549
ag3law@gmail.com

_Brooke Oki_
_____
Brooke Y. Oki
Assistant United States Attorney